**SOUTHERN PACIFIC COMPANY, a corporation, Plaintiff,**

v.

**SWITCHMEN'S UNION OF NORTH AMERICA, a Voluntary Association, et al., Defendants.**

No. 35058.

United States District Court
N. D. California, S. D.

March 5, 1956.

A. Burton Mason, W. A. Gregory, Jr., San Francisco, Cal., for plaintiff-counter-defendant.

Roland C. Davis, Carroll, Davis & Burdick, San Francisco, Cal., Clifford D. O'Brien, Chicago, Ill., for Switchmen's Union of No. America.

Hildebrand, Bills & McLeod, Oakland, Cal., for defendants, Brotherhood of Railroad Trainmen.

ROCHE, Chief Judge.

This is an action for declaratory relief brought by the plaintiff, Southern Pacific Company, against the defendants Switchmen's Union of North America (hereinafter referred to as Switchmen's Union) and the Brotherhood of Railroad

Trainmen (hereinafter referred to as the Trainmen's Union). This court has jurisdiction of the subject matter because this suit arises under a law regulating commerce, the Railway Labor Act, Title 45 U.S.C.A. §§ 151 et seq., particularly Section 2, Eleventh, of said Act, 45 U.S.C.A. § 152, Eleventh. The complaint in said action alleges that the amount involved in controversy exceeds $3,000.

The defendants have moved for summary judgment and the Court will dispose of this matter on the record before it. The only issue presented is the legal one of whether under the Railway Labor Act, 45 U.S.C.A. § 151 et seq., an agreement was lawfully entered into between the Southern Pacific and the Trainmen's Union, which agreement provides for the deduction of dues of members of the Trainmen's Union who are in the employ of the Southern Pacific, notwithstanding the fact that certain members of the Trainmen's Union are working as yardmen, and therefore are subject to the collective bargaining agreement between the Southern Pacific and the Switchmen's Union.[1]

The agreement in question was entered into on June 23, 1955, effective August 1, 1955 and provides that the Southern Pacific will check off and pay over to the Trainmen's Union "periodic dues, initiation fees, assessments and insurance" from the wages of all members of the Trainmen's Union employed by the Southern Pacific "in any of the services or capacities covered in Section (3) First (h) of the Railway Labor Act defining the jurisdictional scope of the First Division, National Railroad Adjustment Board, upon the written and unrevoked authorization of a member." The carrier and the Trainmen's Union have applied the above described check-off agreement to the craft or class of yardmen at all times since the effective date of the agreement and the Southern Pacific has checked-off and paid over to

the Trainmen's Union the dues, initiation fees, assessments and insurance of such of the yardmen as joined or were members of the Trainmen's Union and authorized such check-off. The Switchmen's Union entered into an identical agreement with the Southern Pacific on August 8, 1955, to be effective as of September 1, 1955.

On September 8, 1955 the Switchmen's Union took the position that the above check-off agreement violated Section 2, Fourth of the Railway Labor Act insofar as it was applicable to yardmen. The Switchmen's Union asked the Southern Pacific to cease giving effect to the agreement insofar as it applied to yardmen. Southern Pacific refused so to do, and in order to resolve the controversy filed this suit for declaratory relief.

Section 2, Fourth, of the Railway Labor Act, 45 U.S.C.A. § 152, Fourth, insofar as here relevant provides:

"it shall be unlawful for any carrier * * * to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions."

Section 2, Eleventh, of the Railway Labor Act, 45 U.S.C.A. § 152, Eleventh, insofar as here relevant provides:

"Notwithstanding any other provision of this chapter * * * any carrier or carriers as defined in this chapter and a labor organization or labor organizations duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

* * * * * *

"(b) to make agreements providing for the deduction by such carrier or carriers from the wages of its or their employees in a craft or class and payment to the labor organization representing the craft or

---

[1]. The National Mediation Board has certified the Switchmen's Union as the

exclusive collective bargaining representative of the craft of yardmen.

class of such employees, of any periodic dues, initiation fees, and assessments * * *.

"(c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service, that is, an employee engaged in any of the services or capacities covered in the First Division of paragraph (h) of section 153 of this title, defining the jurisdictional scope of the First Division of the National Railroad Adjustment Board, if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; and no agreement made pursuant to subparagraph (b) of this paragraph shall provide for deductions from his wages for periodic dues, initiation fees, or assessments payable to any labor organization other than that in which he holds membership: * * *. That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership from one organization to another organization admitting to membership employees of a craft or class in any of said services.

"(d) Any provisions in paragraphs Fourth and Fifth of this section in conflict herewith are to the extent of such conflict amended."

It is Southern Pacific's and the Trainmen Union's position that Section 2, Eleventh (b) of the Railway Labor Act which authorizes the making of dues deduction agreements generally, must be read in conjunction with the next following subsection of Section 2, Eleventh. The latter, Section 2, Eleventh (c), specifically provides that the requirement of membership in a labor organization, under a union shop agreement made pursuant to the Act, shall be satisfied, as to employees in engine, train, yard, or hostling service, if the employee holds or acquires membership in any one of the labor organizations national in scope, which are organized in accordance with the act and admit to membership employees of a craft, or class in any of the said four services.

The record in this case reveals that in the railroad industry men whose principal employment is in one craft, for example, the craft of brakemen, are occasionally, and sometimes frequently employed as members of another craft, for example, as conductors or as yardmen. In view of the interchangeable nature of the employment, it would seem that the only reasonable and workable interpretation of the statutes herein considered is that the union to which said man belongs shall have the right to enter a dues deduction agreement with the carrier, a right which is provided for in all of the contracts shown to the Court, including the contract of the Switchmen's Union itself.

Substantiating this conclusion is the report of the Committee on Labor and Public Welfare in Senate Report No. 2262, U.S.Code Cong.Service, 81st Cong., Second Session, 1950, page 4319, in which is set forth the purposes and background of the legislation now before the court for construction and which states in part as follows:

"S. 3295 is intended to relax the prohibitions contained in paragraphs fourth and fifth of section 2 of the Railway Labor Act against all forms of union security agreements and against the deduction from the wages of employees of 'any dues, fees, assessments, or other contributions payable to labor organizations.'

* * * * * *

"The bill would also permit a carrier and a labor organization duly authorized to represent employees under the act to enter into agreements providing for the check-off

from the wages of employees of periodic dues, initiation fees, and assessments. Here, too, the bill does not impose such an agreement; it merely permits a carrier and a labor organization, through the voluntary processes of collective bargaining, to include a check-off provision in the collective contract.

"The present prohibitions against all forms of union security agreements and the check-off were made part of the Railway Labor Act in 1934. They were enacted into law against the background of employer use of these agreements as devices for establishing and maintaining company unions, thus effectively depriving a substantial number of employees of their right to bargain collectively. It is estimated that in 1934 there were over 700 agreements between the carriers and unions alleged to be company unions. These agreements represented over 20 percent of the total number of agreements in the industry.

"It was because of this situation that labor organizations agreed to the present statutory prohibitions against union security agreements. An effort was made to limit the prohibition to company unions. This, however, proved unsuccessful; and in order to reach the problem of company control over unions, labor organizations accepted the more general prohibitions which also deprived the national organizations of seeking union security agreements and check-off provisions. It is thus clear that these organizations did not oppose union security and check-off agreements as such but merely their use as a means of carrier control over the bargaining process.

"Since the enactment of the 1934 amendments, company unions have practically disappeared. Labor organizations representing employees in industries covered by the Railway Labor Act now seek to gain for themselves the right to bargain collectively with regard to union-shop agreements and check-off. This right is possessed by unions representing employees in industry generally. Your committee is of the opinion the right should now be extended to labor organizations subject to the Railway Labor Act."

It can be seen from the above that the abuse at which prior legislation had been directed was the use of dues deduction agreements as a means of carrier control over the bargaining process. Since company unions "have practically disappeared" it was the legislature's intent to give "labor organizations * * * covered by the Railway Labor Act * * * the right to bargain collectively with regard to union-shop agreements and check-off", a right possessed by unions representing employees in industry generally.

In conclusion, the Railway Labor Act, Section 2, Eleventh, Subdivision (c), 45 U.S.C.A. § 152, Eleventh (c) provides that no agreements for deductions from an employee's wages or dues, initiation fees, or assessments are to be made by the carrier payable "to any labor organization other than that in which he holds membership." This provision, considered in the light of the overall legislative intent to give the railroad unions the rights possessed by unions in industry generally, indicates that the employee is not tied as far as payment of dues is concerned to the union holding the contract with the carrier, but rather to the union in which he holds membership.

In accord with the foregoing it is hereby declared that the said "Dues Deduction Agreements" hereinabove described are wholly valid and enforceable, and in accordance with the terms of the ·Railway Labor Act.